UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

HERBERT A. CONLEY, )
)
    *Plaintiff,* )
*v.* ) No.1:04-cv-060
) *Edgar*
YELLOW FREIGHT SYSTEM, INC., )
)
    *Defendant.* )

### MEMORANDUM

Plaintiff Herbert A. Conley brings this wrongful termination action against his former employer, defendant Yellow Freight System, Inc. ("Yellow Freight"). Mr. Conley alleges that he was terminated in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), and/or in violation of the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304.

Yellow Freight moves for summary judgment dismissal of both of Mr. Conley's claims [Court Doc. No. 16], and Mr. Conley opposes the motion for summary judgment [Court Doc. No. 21]. Yellow Freight replied to Mr. Conley's opposition [Court Doc. No. 22], and Mr. Conley filed a sur-response [Court Doc. No. 23]. After reviewing the record in the light most favorable to Mr. Conley, the Court finds that defendant's motion for summary judgment will be GRANTED. Mr. Conley's ADEA claim will be **DISMISSED WITH PREJUDICE**, and his TPPA claim will be **DISMISSED WITHOUT PREJUDICE**.

**I.    Background**

The facts, seen in the light most favorable to the plaintiff, are as follows. Mr. Conley was born March 29, 1952. [Court Doc. No. 21, Affidavit of Herbert A. Conley ("Conley Aff."), ¶ 1].

Mr. Conley began working for Yellow Freight sometime in 1987 as an over-the-road ("OTR") truck driver. [Court Doc. Nos. 17-3, 21, Deposition of Herbert A. Conley ("Conley Dep."), pp. 106-07]. Mr. Conley apparently performed his job well for several years. On June 18, 2002 then Senator Fred Thompson sent Mr. Conley a letter congratulating him for driving over one million miles without a preventable accident. Conley Aff., Ex. B. On August 3, 2002 the President of Yellow Freight sent a letter of congratulations to Mr. Conley regarding his 15 years of service with the company. Conley Aff., Ex. A. The letter states, "I commend you for your fine work and I wish you every success as you continue your career with Yellow." *Id.*

In the fall of 2002, however, Mr. Conley began to experience employment difficulties. In September of 2002, Jeff Kisor took over the position of general operations manager for Yellow Freight's Chattanooga terminal. Conley Aff., ¶ 6. Around this time, Jeff Kisor and James Aiken, another Yellow Freight supervisor, began to admonish Mr. Conley "to the effect that [he] should take less time on [his] over the road runs." *Id.* On September 13, 2002 Mr. Conley attended a meeting with Terry Cobb, a Yellow Freight supervisor, and Wayne Shelton, another Yellow Freight truck driver. *Id.* At the meeting Mr. Cobb played a recording of a speech by the president of a competitor following the news that the competitor was ceasing operations. *Id.* Mr. Conley believed the message of the meeting was that he was "indirectly but firmly advised to complete [his] runs more quickly." *Id.* Mr. Conley asserts that Mr. Cobb indicated that "if you're full in 30 minutes as opposed to an hour, he wanted us rolling" and that "no matter what it took, he wanted us–he wanted his wheels rolling." Conley Dep., pp. 179-80. Mr. Conley responded to this meeting by writing a letter to Mr. Cobb dated September 16, 2002. The letter states:

> It appears the main reason you wanted to meet with us was to encourage us
> to change our work habits. However, over my tenure with Yellow Freight

> Systems, I have received numerous awards, letters of commendation and complements on my safe and timely driving performance thus far. . . . My first and foremost goal is to complete each route following all Federal Motor Carrier Safety Regulations, specifically Code 392.3 . . . I believe you know where I stand on sacrificing safety performance as opposed to causing an accident, injury or both to myself or others. I will make every effort to comply with your wishes, but, I will not jeopardize myself or Yellow Freight to do so.

Conley Aff., Ex. C. Shortly after this letter to Mr. Cobb, on October 2, 2002, Mr. Conley received a warning letter from James Aiken regarding his failure to "sign in and out properly and accurately" in accordance with the union agreement. *Id.* at Ex. D. The letter indicated that further violations of the sign-out policy would subject him "to more severe disciplinary action." *Id.* Section 42 of the union agreement states, "[d]rivers are required to sign in and sign out properly and accurately. This will be policed by the Employer and stewards. Failure to do so will result in: Warning letter (first (1st) occurrence), Three (3) day suspension (second (2nd) occurrence), and discharge (third (3rd) occurrence), subject to Article 45." [Court Doc. 17-3, Ex. 3].

The sign in sheet from the relevant day indicates that Mr. Conley had been dispatched from Charlotte, NC, instead of Atlanta, GA. Conley Aff., Ex. E. Mr. Conley asserts that he signed out of his place of origination that day, which was Charlotte, NC, but that he failed to sign out of his intermediate stop in Atlanta, GA. Conley Aff., ¶ 8. Mr. Conley also asserts that he never received "any instruction as to exactly how the sign in/sign out sheets should be completed." *Id.* Mr. Conley admits that on October 8, 2002 he failed to complete the outbound sign-out sheet when he was dispatched from Chattanooga, TN to Charlotte, NC. *Id.* at ¶ 9. He received another warning letter from Yellow Freight dated October 11, 2002. *Id.* at Ex. F. The letter indicated that Mr. Conley would receive a three-day suspension and that further violations of the policy would "result in more severe disciplinary action being taken, up to and including discharge." *Id.*

-3-

On November 5, 2002 Yellow Freight dispatched Mr. Conley from Atlanta, GA to Chattanooga, TN. Conley Aff., ¶ 10. Upon arriving at the Chattanooga terminal, Mr. Conley initially failed to sign in on the designated sign-in sheet. *Id.* Mr. Conley started to drive home. Before he reached his home, however, he recalled that he had not signed the sign-in sheet. He immediately returned to the Chattanooga terminal to sign the sheet. Upon his return to the terminal, Mr. Conley could not find the sign-in sheet in any of its customary locations. *Id.* He entered the dispatch office and obtained a clean sign-in sheet and signed it. *Id.* at Ex. H; Conley Dep., p. 223-25. He then left the sheet with his signature in the appropriate place in the terminal. Conley Aff., ¶ 10. Mr. Conley asserts that he signed in on the blank sign-in sheet within thirty minutes of his return to Chattanooga. *Id.* at ¶ 14. Mr. Conley's supervisor, Mr. Cobb, admitted that failing to sign in immediately upon arrival in the terminal "should be" permissible for as long as thirty minutes. [Court Doc. No. 21, Deposition of Terry Lee Cobb ("Cobb Dep."), p. 124].

On November 6, 2002 Yellow Freight sent Mr. Conley a letter indicating that he failed to sign in at the Chattanooga terminal upon his return on November 5, 2002. Conley Aff., Ex. I. The letter indicated that Mr. Conley was "being discharged" because it was his fourth offense for failing to sign in or out properly and accurately. *Id.* Yellow Freight admits that it retracted the third offense because its notice was defective. [Court Doc. No. 17-1, p. 12]; Conley Dep., pp. 130-34. The letter also stated, "[s]hould you elect to protest this discharge, you will continue to work as your seniority allows until such time as the grievance Committee has rendered a decision." Conley Aff., Ex. I.

Mr. Conley received the letter on November 11, 2002 when he checked his post office box. Conley Aff., ¶ 13. Mr. Conley understood that under the Teamster's union agreement to which he

and Yellow Freight were subject, the November 6, 2002 letter was treated as a conditional notice of "intent to discharge." *Id.* at ¶¶ 15, 16. Mr. Conley's supervisor, Jeff Kisor, also admitted that "at that point in time it wasn't a discharge, it was an intent to discharge." [Court Doc. No. 21, Deposition of Jeffrey Andrew Kisor ("Kisor Dep."), p. 83]. Mr. Kisor indicated that the "intent to discharge" was part of Yellow Freight's contract with the Teamster's union. *Id.* at p. 84.

Mr. Conley grieved the intent to discharge and continued working full-time with full pay and benefits. Conley Aff., ¶ 15. At the conclusion of a discharge hearing on April 23, 2003, Yellow Freight terminated Mr. Conley. *Id.* Mr. Conley was 51 years old at the time.

The next driver that Yellow Freight hired following Mr. Conley's discharge was a man named David Meeks. Conley Aff., ¶ 24. Mr. Conley asserts that Mr. Meeks is four years younger than he is. *Id.*

Mr. Conley presents evidence that younger Yellow Freight employees were treated more favorably than he for their failure to sign the sign in/sign out sheet and for their attempts to correct a failure to sign in. He presents affidavits of two Yellow Freight truck drivers in support of his allegation that younger employees were treated more favorably. One of the truck drivers, George Shelton, attests that "I personally know that the 'sign in/sign out' rule described above has routinely and consistently been violated by Yellow Freight drivers, including myself, without being disciplined by Yellow Freight." [Court Doc. No. 21, Affidavit of Gerald Wayne Shelton ("Shelton Aff."), ¶ 7; *see also* Court Doc. No. 23-2, Supplemental Affidavit of Gerald Wayne Shelton ("Supp. Shelton Aff."), ¶¶ 4-5]. Mr. Shelton asserts that Tony Simpson, an OTR driver who is six years younger than Mr. Conley, has frequently driven from Charlotte through Atlanta and then to Chattanooga without signing in or out in Yellow Freight's Atlanta terminal. Mr. Shelton also asserts

that Mr. Simpson has not been disciplined as severely as Mr. Conley. Shelton Aff., ¶ 7; *see also* Conley Aff. ¶ 22. Mr. Shelton and Mr. Conley assert that three other employees younger than Mr. Conley by between four and seven years also have not been disciplined for their failures to sign in or sign out properly and accurately. Shelton Aff., ¶ 7; Conley Aff., ¶ 22. The youngest one is Carl Laue, who is seven years younger than Mr. Conley. Supp. Shelton Aff., ¶ 4. Mr. Conley further alleges that Yellow Freight did not discipline Paul Martinetti, one of the four comparators, for correcting an error on his sign in/sign out sheet. Conley Aff., ¶ 23.

Mr. James Stockley, another Yellow Freight OTR truck driver, asserts that noncompliance with the sign in/sign out policy "has been widespread" and that no other employee to his knowledge has been terminated for repeated violations of the policy except for Mr. Conley. [Court Doc. No. 21, Affidavit of James Stockley, "Stockley Aff.", ¶ 7]. Mr. Conley admits that the drivers with whom he worked in Chattanooga were all over the age of 40 and that some of the managers were older than he was. Conley Dep., p. 218.

On September 4, 2003 Mr. Conley sent the Equal Employment Opportunity Commission ("EEOC") office in Nashville an age discrimination charge via facsimile. Conley Aff., ¶ 20. The EEOC stamped the charge as having been received on September 8, 2003. *Id.* at Ex. 19. On March 4, 2004 Mr. Conley filed his complaint in the instant action.

**II.     Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving

party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.

*Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

**III. Analysis**

*A. ADEA Claim*

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

**1. Statute of Limitations**

Yellow Freight argues that Mr. Conley's ADEA claim is barred by the statute of limitations. The ADEA provides that in states that have enacted their own laws prohibiting age discrimination in employment, a charge of discrimination must be filed with the EEOC "within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." 29 U.S.C. § 626(d). Tennessee is a deferral state. *Newsom v. Textron Aerostructures*, 924 S.W.2d 87, 94 n.8 (Tenn. Ct. App. 1996); *see* Tenn. Code Ann. § 4-2-101 (1991).

Yellow Freight asserts that under the U.S. Supreme Court decisions in *International Union of Electrical Radio and Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the unlawful practice of which Mr. Conley complains occurred when he received the November 6, 2002 letter and not upon his actual termination in April 2003. However, the Court concludes that it need not determine when the allegedly unlawful practice occurred because even

-8-

if the date Mr. Conley received the notice of intent to discharge constitutes the discriminatory act pursuant to 29 U.S.C. § 626(d), the Court finds that Mr. Conley's EEOC charge is timely. The Supreme Court made clear in *Ricks* that the limitation period begins to run when the adverse decision is made and the plaintiff is notified of the decision. 449 U.S. at 259. Although the intent to discharge notice is dated November 6, 2005, Mr. Conley asserts that he did not receive the notice until he checked his post office box on November 11, 2005. Conley Aff., ¶ 13. Yellow Freight asserts that this testimony contradicts his deposition testimony that he received the notice within several days. The Court finds that the description of "within several days" does not clearly contradict a time period of five days' time. Further, Mr. Conley has submitted evidence that he faxed his charge to the Nashville EEOC office on September 4, 2003, and this is the date noted next to his signature on the charge. Conley Aff., ¶ 20, Ex. N. As Mr. Conley correctly points out, the EEOC determines the date of filing from the date of the letter when a charge is filed by mail. 29 C.F.R. § 1626.7(b)(1). Thus, Mr. Conley filed his charge within 300 days of the date he received notice of the intent to discharge on November 11, 2003, and his ADEA claim is timely.

### 2. **Plaintiff's Substantive Burden on Summary Judgment**

Liability under the ADEA will depend on whether the protected trait of age " 'actually motivated the employer's decision.' " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). The Supreme Court has " 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.' " *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93

-9-

Case 1:04-cv-00060   Document 27   Filed 10/25/05   Page 9 of 14   PageID #: 23

S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must initially demonstrate a prima facie case of discrimination. *Reeves*, 530 U.S. at 142. The plaintiff may establish a prima facie case "by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of circumstantial evidence which creates an inference of discrimination." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995) (citations omitted).

When a plaintiff chooses to establish a prima facie case using circumstantial evidence, the plaintiff must demonstrate: (1) membership in the protected group; (2) an adverse employment decision; (3) qualification for the position; and (4) replacement by a substantially younger person. *Talley*, 61 F.3d at 1246; *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). The Sixth Circuit has held that the "fourth element may be replaced with the requirement that the plaintiff show she was treated differently from similarly-situated individuals" who are substantially younger. *Policastro v. Northwest Airlines Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)); *see also O'Connor*, 517 U.S. at 312-13.

Once the plaintiff articulates a prima facie case of discrimination, the burden shifts to the defendant to demonstrate that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Reeves*, 530 U.S. at 142. If the defendant makes such a showing, the *McDonnell Douglas* framework disappears and discrimination remains the sole issue. *Id.* at 143. At that point the plaintiff "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a

pretext for discrimination.'" *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

In the instant action Yellow Freight argues that Mr. Conley fails to state a prima facie case of discrimination. Mr. Conley does not argue that he has established a prima facie case through direct evidence of discrimination. Instead, he attempts to state a prima facie case using circumstantial evidence. The parties do not contest that Mr. Conley satisfies the first prong of the prima facie case by being a member of the protected class of individuals over the age of 40. Conley Aff., ¶ 1. Further, the parties do not contest that Mr. Conley experienced the adverse employment action of termination. Yellow Freight appears to argue that Mr. Conley was not qualified for his position because of his failure to sign in and sign out properly and accurately, the alleged reason it terminated him. However, the Sixth Circuit has determined that a defendant may not use its legitimate nondiscriminatory reason for the adverse employment action to demonstrate that the plaintiff was not qualified for his or her position. *See, e.g., Wexler v. White's Fine Furniture*, 317 F.3d 564, 593 (6th Cir. 2003); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000). Mr. Conley presents sufficient evidence of satisfactory performance to demonstrate that he was qualified for his position. In August of 2002, the President of Yellow Freight sent Mr. Conley a letter congratulating him on his "fine work" during his 15 years of service. Conley Aff., Ex. A. In June of 2002, then Senator Fred Thompson sent Mr. Conley a letter congratulating him for driving over one million miles without a preventable accident. Conley Aff., Ex. B. Based on this evidence the Court finds that Mr. Conley has demonstrated a sufficient showing of his qualifications to demonstrate this prong of his prima facie case.

The parties also dispute whether Mr. Conley has demonstrated the fourth prong of his prima facie case. Mr. Conley presents evidence that his replacement, David Meeks, is four years younger than he. Conley Aff., ¶ 24. However, to state a prima facie case based on replacement by a younger individual, the replacement must be substantially younger. *O'Connor*, 517 U.S. at 312-13. The Sixth Circuit has held that in the absence of direct evidence of discrimination, an age difference of less than six years is not substantial. *See Grosjean*, 349 F.3d at 340. The Sixth Circuit has also held that a prima facie case may be stated with evidence that younger employees were treated more favorably. *Policastro*, 297 F.3d at 539. Mr. Conley presents evidence that four other specific, younger individuals violated the same policy for which he was terminated, but were not disciplined as severely. Shelton Aff., ¶ 7; Supp. Shelton Aff., ¶¶ 4-5.

Yellow Freight is correct that the Sixth Circuit requires a plaintiff to demonstrate that similarly-situated employees are similar in all relevant respects. *See Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 378 (6th Cir. 2002). Yellow Freight argues that there is insufficient evidence to demonstrate that these employees were similarly situated in all relevant respects. However, the evidence indicates that the alleged comparators were all OTR truck drivers subject to the same union agreement who engaged in precisely the same violations as Mr. Conley did without being disciplined as severely. Shelton Aff., ¶ 7; Supp. Shelton Aff., ¶¶ 4-5. Yellow Freight does not submit evidence that any other employees were disciplined as severely for engaging in the same behavior that Mr. Conley did.

However, as a matter of law in the Sixth Circuit, three of the four alleged comparators are not substantially younger than Mr. Conley. *See Grosjean*, 349 F.3d at 340; Supp. Shelton Aff., ¶ 4. In *Grosjean* the Sixth Circuit held that "an age difference of six years or less between an

-12-

employee and a replacement is not significant." *Id.* The Sixth Circuit further noted that, "[t]his rule will assist district courts in making a firm determination, yet does not encroach on our precedent holding that eight years can be a significant age difference." *Id.* The only alleged comparator who is potentially substantially younger than Mr. Conley is Carl Laue, who is seven years younger than Mr. Conley. Supp. Shelton Aff., ¶ 4. The Supreme Court has held that age discrimination may still exist despite the fact that an employee treated more favorably is a member of the protected class if there is a substantial difference in ages. *O'Connor*, 517 U.S. at 312-13. However, the cases in which courts have found a triable issue of fact regarding age discrimination where comparator employees are less than eight years younger than the plaintiff are cases in which other significant evidence of age discrimination, such as ageist comments, exists. *See, e.g., Grosjean*, 349 F.3d at 336-40 (collecting cases). In the instant action Mr. Conley produces no evidence of age animus. Therefore, based on the record in this case, the Court concludes that Mr. Conley fails to state a prima facie case of age discrimination because he fails to create a genuine issue of material fact regarding whether he was treated less favorably than employees who were substantially younger than he. For this reason, the Court will GRANT Yellow Freight's motion for summary judgment on Mr. Conley's ADEA claim.

### B. *Termination in Violation of Public Policy Claim*

Mr. Conley also brings a claim for termination in violation of public policy under Tenn. Code Ann. § 50-1-304. His complaint asserts that the basis for this Court's jurisdiction over this claim is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Tenn. Code Ann. § 50-1-304 states in relevant part:

> (a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

-13-

> . . .
>
> (c) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.
>
> (d)(1) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

Tenn. Code Ann. § 50-1-304. 28 U.S.C. § 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . . if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . ." 28 U.S.C. § 1367(c). Because this Court has dismissed the only claim over which it had original jurisdiction, Mr. Conley's ADEA claim, the Court will **DISMISS WITHOUT PREJUDICE** Mr. Conley's termination in violation of public policy claim brought pursuant to Tenn. Code Ann. § 50-1-304.

### IV. Conclusion

After reviewing the record and the applicable law, the Court concludes that no genuine issue of material fact exists regarding plaintiff's claim against the defendant Yellow Freight under the ADEA. Therefore defendant's motion for summary judgment on plaintiff's ADEA claim will be **GRANTED**. Plaintiff's ADEA claim will be **DISMISSED WITH PREJUDICE**. Plaintiff does not assert diversity jurisdiction in his complaint. Plaintiff's claim under the TPPA will be **DISMISSED WITHOUT PREJUDICE** because this Court elects not to exercise supplemental jurisdiction of this claim.

A separate judgment will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE